Marshall E. Lippman, P.C., New York City, for defendants.

Clifton & Schwartz, Arthur Z. Schwartz, New York City, for defendant Honest Ballot Ass'n.

**Jack WOLFSON, Plaintiff,**

v.

**The NEWSPAPER AND MAIL DELIVERERS' UNION OF NEW YORK AND VICINITY, Edward Gritz, and Tony Guccia, as Chairmen of Election of the Newspaper and Mail Deliverers Union of New York and Vicinity, and Honest Ballot Association, Defendants.**

**No. 87 CIV 3510 (KC).**

United States District Court, S.D. New York.

May 26, 1989.

## OPINION AND ORDER

CONBOY, District Judge:

This is a dispute, in substance, between two candidates for the presidency of the Newspaper and Mail Deliverers' Union of New York and Vicinity ("Union").

On May 1, 1989, the defendant Union held an election at the Marc Ballroom in Union Square, New York City, for its officers and executive council members. The election was conducted under the auspices of the Honest Ballot Association ("HBA"), which was engaged by the Union for this purpose by approval and acceptance of a letter agreement on March 3, 1989. Exhibit B, Affidavit of Murray Schwartz, sworn to May 25, 1989 ("Schwartz Aff."). This agreement explicitly states that "all interim results [of the election] are not official until the certification is issued." During the course of the election a dispute arose concerning the accuracy of certain eligibility lists, which according to the HBA on-site supervisor, led to "overwhelming" problems, many challenged ballots and the disqualification of "approximately 50 people." Affidavit of Melville Landsberg, undated but filed May 25, 1989 ("Landsberg Aff.") When the polls closed at 10:00 p.m., the HBA supervisor gave the tally to the Secretary–Treasurer of the Union, but also

pointed out the closeness of the election for certain offices and the aforementioned problems in the election process. Nonetheless, the Secretary–Treasurer swore in the winners, based upon the tally alone, and without a formal certification of the results from the HBA. One of those sworn in was the plaintiff herein, Jack Wolfson, who, according to the unofficial tally, defeated his rival Mike Alvino, for the Presidency of the Union, 807 votes to 783 votes, a margin of 24 votes.

The following day, the HBA notified the Union in writing that it could not provide a certification of the results because there had been two written protests (one from Mr. Alvino) which were forwarded to the Union with the letter, and twenty-five challenged ballots (voters whose names were not on the eligibility list provided by the Union, and who disagreed with the list, were permitted to vote challenged ballots). Exhibit 3, Affidavit of Jack Wolfson, undated ("Wolfson Aff.").

The Union's Constitution and By–Laws provides that elections shall be conducted "pursuant to the rules of the Honest Ballot Association" (Article II, Section 18), that following the tally the HBA "shall certify the results of the election to the Chairman of Election" (Article II, Section 23), who in turn "must verify the same over his signature and forward it to the Secretary–Treasurer" for filing (Article II, Section 24), that the Chairman of Election shall be selected by the Union's Executive Board from a list of four members proposed by the President (Article II, Section 13) and that there is an Executive Council that "shall hear all matters in dispute among members of the Union or between members and the Union, and report their findings at the next meeting of the General Body for action thereon" (Article VII, Section 7(c)). Exhibit A, Wolfson Aff.

On May 4, 1989, the Chairmen of Election (two members were appointed, although the Constitution and By–Laws specifically limit the office to one member) submitted a brief, highly general report to the Union that made no explicit factual findings on either the challenged ballots,

the specific terms of the two protests, or the asserted deficiencies of specific eligibility lists, and declared the May 1 election null and void. The Union leadership, without formal review or supplemental endorsement, accepted the report as final and called a new election for May 22, 1989.

Plaintiff Wolfson on May 15, 1989 filed an action in New York State Supreme Court against the Union and the HBA, asserting a violation of contract rights under the Constitution and By–Laws and seeking a mandatory injunction requiring: the HBA to certify the election, if appropriate; the Chairmen of Election to forward their report to the Executive Council; and the Executive Council to hear and determine the dispute between the members and submit the same to the general membership for final resolution. Complaint at 5. In substance, plaintiff claimed that the Chairmen of Election had usurped the powers and duties of the Executive Council under Article VII, Section 7(c) of the Constitution and thereby deprived him and the members generally of the right to have the election dispute resolved by the Council and the membership at large. Complaint at ¶¶ 16–19.

New York Supreme Court Justice Carol E. Huff denied the application for a Temporary Restraining Order on May 15, 1989 and set the matter down for a hearing on May 19, 1989, the last business day before the scheduled re-run election. At approximately 5:00 p.m. on May 18, 1989, the Union removed the action to this Court, asserting federal question jurisdiction under Title I, Section 101(a)(1) of the Labor—Management Reporting and Disclosure Act of 1959, since, according to the Union, the State complaint was alleging a deprivation of "Equal Rights," Removal Petition, ¶ 7. On May 19, 1989 the plaintiff sought a temporary restraining order from us to stop the rerun election on the following business day. At an informal hearing at mid-day, the plaintiff and the Union appeared by counsel, and the HBA appeared without counsel. None of the parties challenged the Court's jurisdiction to hear the case. Finding that "defendants have given no persuasive argument as to why a [tem-

porary restraining order] would prejudice the Union leadership, and their [defendants'] assertion that the proposed new election should be allowed to proceed without at least a preliminary inquiry into plaintiff's complaint about procedures associated with the disputed election of May 1, 1989 would invite a chaotic and wholly unworkable result if the outcomes are ultimately established to be at variance," we issued an order restraining the Union from conducting the scheduled re-run election and set the matter down for a hearing on the following business day, May 22, 1989.

At the conclusion of the hearing, counsel for all parties requested that the Court accept briefs on the matter until May 25, 1989.

The plaintiff is now further seeking an order requiring the Union to recognize plaintiff Wolfson as the duly elected President until such time as either the Union internal procedures or "the Secretary of Labor determines otherwise with the consent of the parties or if a court determines otherwise upon the suit of the Secretary of Labor." Plaintiff's Post–Hearing Memo. at 3.

Plaintiff concedes that this Court has no jurisdiction to determine the merits of any contested issues in a post election challenge, in that the rights sought to be protected are covered by Title IV (Elections) and not Title I (Bill of Rights) of the Labor—Management Reporting and Disclosure Act of 1959. *Id.* at 10. The United States Supreme Court, in *Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), declared that Title IV violations are in the exclusive, primary jurisdiction of the Secretary of Labor. In 1984, the Supreme Court rejected a claim of Title I (29 U.S.C. § 411) jurisdiction, which is vested in District Courts, predicated upon a theory that a member's right to vote had been impaired by a faulty election process. The Court held that § 403 of Title IV [29 U.S.C. § 483] plainly bars Title I relief in a dispute which arises as to the validity of an election that has already been completed. *Local 82, Furniture and Piano Moving v.*

*Crowley,* 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984).

In view of the foregoing, plaintiff asserts that this Court has jurisdiction to hear and determine the action as a contract dispute between members of the Union over the meaning and application of the aforementioned provisions of the Constitution and By–Laws. Jurisdiction is said to have been conferred by § 301(a) of the Labor Management Relations Act of 1947, *as amended,* 29 U.S.C. 185(a), which provides:

> Suits for violation of contracts between an employer and a labor organization ... or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The Supreme Court, in a suit brought by a local union against its parent international union, has held that a union constitution is a contract within the plain meaning of § 301(a), *United Ass'n of Journeymen & Apprentices v. Local 334,* 452 U.S. 615, 622, 101 S.Ct. 2546, 2550, 69 L.Ed.2d 280 (1981).

The United States Court of Appeals for the Third Circuit has held that an individual member of a union local may under § 301(a) sue his local for its breach of its international union's constitution, *Lewis v. Int'l Brotherhood of Teamsters, Local 771,* 826 F.2d 1310 (3rd Cir.1987). Our Circuit, in a decision predating *Journeymen,* held that union members could bring an action under § 301(a) alleging that the international violated the charter and by-laws that the [international] granted to the local union if the members alleged that the local union failed to enforce the rights protected in those documents. *Abrams v. Carrier Corporation,* 434 F.2d 1234 (2d Cir.1970). Two other circuits have held that § 301(a) does not provide jurisdiction in a suit by individual union members for violation of a union constitution. *See Trail v. Int'l Brotherhood of Teamsters,* 542 F.2d 961, 967–68 (6th Cir.1976); *Adams v. Int'l Brotherhood of Boilermakers,* 262 F.2d 835, 838 (10th Cir.1959).

The crucial fact that distinguishes all these cases from the dispute before us is that each involved a contract between labor organizations. This point was underscore by the Court in *Lewis:*

> We emphasize that the statutory language of Section 301(a) does not state that suit under that section must be brought by a labor organization. It states only that the suit must be based on a contract *between* labor organizations (emphasis added).

826 F.2d at 1314.

It is, therefore, clear that this Court is without jurisdiction, under either Title IV of the Labor Management Reporting and Disclosure Act or Section 301(a) of the Labor Management Relations Act, to entertain this action.

The Union suggests, but does not argue, that the case may be an action under Title I (Section 101(a)) of the Labor Management Reporting and Disclosure Act. Union's Post–Hearing Memo. at 6. This is simply not tenable. Congress has severely limited the jurisdiction of the federal courts in cases involving union elections, those being cases where a union is asserted to have engaged in discriminatory conduct in relation to the equal rights of members to nominate candidates and vote in union elections. There is no such assertion of discriminatory conduct, or any facts supporting such a theory, in the record. *See Local No. 82, Furniture and Piano Moving v. Crowley,* 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984); *Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975).

The Court emphasizes that this is a post-election case, since plaintiff asserts all his rights in terms of post-election provisions of the Union Constitution and By–Laws. The Complaint here is essentially an attack on the appeal procedures followed by the Union in processing the appeal of two candidates. As such, it is incontestably a post-election Title IV complaint. Plaintiff cannot label Title IV claims to be Title I claims in order to evade the Labor Secretary's jurisdiction. Most to the point, as Chief Judge Timbers said while sitting in the

District Court, there is no jurisdiction here to restrain a new election. *Local 115 v. United Brotherhood of Carpenters,* 247 F.Supp. 660 (D.Conn.1965).

Accordingly, the Court concludes that it is without jurisdiction to hear the case, and the complaint is therefore dismissed. The temporary restraining order is vacated as improvidently granted.

SO ORDERED.