### RADIO–ELECTRONICS OFFICERS UNION, DISTRICT 3, NMEBA, AFL–CIO, Plaintiff,

v.

### RADIO OFFICERS JOINT EMPLOYMENT COMMITTEE and Radio Officers Union Vacation Plan, Defendants.

No. 91 Civ. 1499 (LAP).

United States District Court,
S.D. New York.

Jan. 28, 1993.

Ernest Allen Cohen, Tucson, AZ, Frank & Breslow by Allen B. Breslow, Huntington, NY, for plaintiff.

Dickstein, Shapiro & Morin by Ira R. Mitzner, Washington, DC, Dickstein, Shapiro & Morin by Leonard Garment, New York City, for plaintiff-intervenor.

Proskauer Rose Goetz & Mendelsohn by Bettina B. Plevan, New York City, for defendants.

---

**4.** Such claims may not be dischargeable in bankruptcy in the event that Capossela becomes insolvent.

## OPINION AND ORDER

PRESKA, District Judge.

Plaintiff-intervenor, Jim H. DeLong, has moved to dismiss this action pursuant to Fed.R.Civ.P. 12(h)(3) for lack of subject matter jurisdiction by notice of motion dated August 9, 1991. For the reasons set forth below, the motion is granted, and judgment dismissing this action shall be entered.

### I. *Procedural Background*

Plaintiff, Radio–Electronics Officers Union, District 3, NMEBA, AFL–CIO (the union itself is referred to as the "ROU;" the plaintiff suing on behalf of the ROU is referred to as the "Smith–ROU"),[1] instituted this lawsuit in the Supreme Court of the State of New York, County of New York, on February 1, 1991 by serving a notice of motion for summary judgment in lieu of complaint upon defendants, the ROU Joint Employment Committee and the ROU Vacation Plan (collectively, the "Plans"), seeking monies allegedly owed by the Plans to the ROU. The Plans subsequently removed the action to this Court by notice of removal dated March 1, 1991; the Plans stated as grounds for removal that the Court had federal question jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) because the Smith–ROU sought to enforce against the Plans trust agreements governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

Mr. DeLong, in his capacity as Secretary–Treasurer of the ROU,[2] intervened by stipulation of the parties on April 3, 1991 and thereafter filed a complaint and cross-claim dated April 5, 1991. In the complaint and cross-claim, Mr. DeLong asserted (a) a claim against the Plans for monies owed to the ROU and (b) a cross-claim against the Smith–ROU alleging that this lawsuit was not filed with proper authorization of the ROU and seeking any monies recovered by the Smith–ROU from the Plans. Mr. DeLong's complaint and cross-claim pleaded ERISA as the basis for subject matter jurisdiction in this Court.

The Smith–ROU subsequently asserted a cross-claim against Mr. DeLong, which the Smith–ROU pleaded as arising under both ERISA and the Labor–Management Reporting and Disclosure Act of 1959 (the "LMRDA"), 29 U.S.C. § 401, *et seq.*, seeking an injunction and damages in connection with the government of the ROU by allegedly unauthorized persons. As explained below, a determination of who is the duly elected president of the ROU underlies not only the Smith–ROU's cross-claim against Mr. DeLong but this entire action. Neither the Smith–ROU, Mr. DeLong, nor the Plans disputes that the Plans owe monies to the ROU; rather, this controversy concerns to whom those monies should be disbursed.

### II. *Factual Background*[3]

In the fall of 1990, the ROU held an election of officers (the "1990 election") by a ninety-day mail ballot under the direction of the American Arbitration Association (the "AAA"). Prior to the vote count, several ballots were set aside as challenged; when the ballots were counted by the AAA on December 3, 1990 for the office of president, Mr. Smith had 89 votes and Thomas Harper had 88 votes. A dispute as to this outcome arose out of the possibility that a

---

1. The Smith–ROU brought this lawsuit on behalf of the ROU upon the authority of Lewis D. Smith, who maintains that he became president of the ROU on January 1, 1991. As discussed below, whether Mr. Smith is indeed president of the ROU lies at the heart of this controversy.

2. Mr. DeLong's appointment to the position of Secretary–Treasurer of the ROU is not disputed.

3. Between the filing of Mr. DeLong's motion to dismiss and the reassignment of this matter to the undersigned over one year later, the parties submitted numerous letters to the Court containing information relating to the motion. Because this information was not provided by affidavit, the Court directed the parties to submit affidavits presenting any information which they wished the Court to consider when deciding the motion in addition to their previously served and filed motion papers. *Radio–Electronics Officers Union v. Radio Officers Joint Employment Comm.*, No. 91 Civ. 1499 (LAP), 1992 WL 380917 (S.D.N.Y. Dec. 10, 1992). The factual history provided below is garnered from affidavits submitted pursuant to that order and those motion papers previously served and filed by the parties.

ballot in favor of Mr. Harper might have been improvidently set aside; this dispute created two splinter presidencies of the ROU.[4]

### A. President Harper: Mr. DeLong's Perspective

The AAA immediately appointed an arbitrator, Nicholas H. Zumas, to resolve the debate· surrounding the 1990 election. On December 4, 1990, Mr. Zumas remanded the controversy to the ROU's District Executive Counsel (the "DEC") then in office for resolution.[5]

On December 15, 1990, the DEC ordered a rerun election for the office of president and for two positions on the DEC which had also been at stake in the 1990 election. The DEC also determined that the incumbents for the three positions would remain in office pending the rerun election. Accordingly, Mr. DeLong maintains that Mr. Harper, the incumbent president, remained president pending the rerun election.

The ROU membership thereafter affirmed the DEC's decision in a unanimous vote (31 to 0) taken on January 14, 1991 at a membership meeting in Panama City Beach, Florida. Subsequently, the rerun election concluded on March 25, 1991, and Mr. Harper was elected president of the ROU by a vote of 114 to 68. For these reasons, Mr. DeLong maintains that Mr. Harper is the duly elected president of the ROU.

### B. President Smith: the Smith–ROU's Perspective

On January 1, 1991, Mr. Smith became president of the ROU on the basis of the December 3, 1990 ballot count and a letter from the United States Department of Labor (the "DOL") dated December 17, 1990.

The DOL issued its letter in response to an inquiry made by Ernest Allen Cohen, counsel to the Smith–ROU, regarding the 1990 election. The letter suggests that Mr. Smith could take office on January 1, 1991 despite the dispute surrounding the 1990 election.

On January 14, 1991, the day of the Florida membership meeting, Mr. Smith conducted a coinciding membership meeting in Washington, D.C. The ROU membership present in Washington, D.C. also reviewed the DEC action of December 15, 1990 but, in contrast to the membership present in Florida, voted (3 to 0) to reverse the DEC's order.

The vote held in Washington, D.C. occurred earlier in the day than the vote held in Florida and, according to the Smith–ROU, therefore made the Florida vote moot. In other words, the Smith–ROU contends that, upon the vote of the ROU membership at a membership meeting, i.e., the meeting in Washington, D.C., any subsequent appeal of the DEC determination of December 15, 1990 had to proceed to the NEC—not another membership meeting such as the one in Florida—and no such appeal was taken.

Under the Smith–ROU's reasoning, the rerun election of March 1991 was therefore unauthorized because the ROU membership (at the Washington, D.C. membership meeting) reversed the DEC's order of the rerun election. On this basis, the rerun election was challenged in various union forums and eventually to the DOL.

### C. The DOL

On July 24, 1991, the DOL wrote to Judge Kram of this Court, from whom this matter was transferred, informing her that the DOL was investigating a challenge to

---

**4.** For reasons made clear below, the Court takes no position as to whether Mr. Smith or Mr. Harper is the duly elected president of the ROU. The Court relates facts regarding the presidency of the ROU only in order to provide necessary background to this decision.

**5.** A substantial hierarchy surrounds the ROU and its parent organization, the National Marine Engineers' Beneficial Association (the "NMEBA"). In short, the ROU and the NMEBA each have an executive committee; the ROU's executive committee is the DEC, and the NMEBA's executive committee is the National Executive Committee (the "NEC"). Action taken by the DEC or the NEC can be appealed to the ROU membership or a NMEBA convention, as appropriate. Thus, the tiers of union review ascend in the following order: the DEC, the ROU membership, the NEC, and a NMEBA convention.

the rerun election and that, pursuant to Title IV of the LMRDA, "the exclusive remedy for challenging [in the district court] the validity of an election already conducted is a lawsuit brought by the Secretary of Labor." The DOL requested that the Court not assert jurisdiction in this case "over the dispute that arises under provisions of Title IV of the LMRDA." This letter was the impetus for the parties to brief the issue of subject matter jurisdiction.

Although the Smith–ROU contends otherwise, the DOL letter clearly encompassed both the 1990 election and the rerun election in its assertion of exclusive jurisdiction. Although the DOL received a formal challenge to the rerun election alone, the DOL recognized in its letter that the challenge "[sought] to implement and enforce the results of the 1990 election" and that Title IV of the LMRDA covers each of the elections.

The DOL subsequently ruled on November 22, 1991 that Mr. Harper is the duly elected president of the ROU. Notably, the DOL recognized in its decision the legitimacy of the ROU membership's affirmance at the Florida membership meeting of the DEC decision to conduct the rerun election, and the DOL decision included a review of the 1990 election.

### D. *Epilogue*

One might have thought that recognition by the DOL of Mr. Harper as president of the ROU would have curtailed the debate surrounding the 1990 election; instead, it spawned only further controversy. The parties have presented extensive materials to the Court regarding the substance of various lawsuits and union initiatives, some closed and others persisting, arising out of the 1990 election.

Rather than explore this morass, it suffices for the purposes of this motion and this lawsuit to note that the presidency of the ROU remains controversial. Of special note in this regard, an action was brought against the DOL on February 24, 1992 seeking review of the DOL's refusal to commence suit in the district court to set aside the rerun election and install Mr. Smith as president of the ROU.

That action was voluntarily dismissed following the determination on March 16, 1992 by a NMEBA convention that Mr. Smith is the duly elected president of the ROU. Not surprisingly, a coinciding NMEBA convention across the street concluded that Mr. Harper is the duly elected president of the ROU. Although the dispute surrounding the ROU presidency is presently being explored in mediation, there is no reason to believe that a reconciliation is near. In fact, the existence of various proceedings in numerous forums each having possible repercussions upon the results of the 1990 election only make the already muddled status of the ROU presidency more uncertain.

### III. *Discussion*

Title IV of the LMRDA

"sets up a statutory scheme governing the election of union officers, fixing the terms during which they hold office, requiring that elections be by secret ballot, regulating the handling of campaign literature, requiring a reasonable opportunity for the nomination of candidates, authorizing unions to fix 'reasonable qualifications uniformly imposed' for candidates, and attempting to guarantee fair union elections in which all the members are allowed to participate."

*Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, and Packers v. Crowley,* 467 U.S. 526, 539, 104 S.Ct. 2557, 2564–65, 81 L.Ed.2d 457 (1984) (quoting *Calhoon v. Harvey,* 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964)).

Procedures for enforcing the standards established under Title IV are contained within Title IV, 29 U.S.C. § 482, and the remedies "for challenging an election already conducted shall be exclusive." 29 U.S.C. § 483. Those remedies allow for jurisdiction in the district court only upon the establishment of three prerequisites:

First, union members must exhaust internal union remedies. Then they must file a complaint with the Secretary of Labor. Section 402(a), 29 U.S.C.

§ 482(a). Finally, if the Secretary of Labor "finds probable cause to believe that a violation ... has occurred ... he shall ... bring a civil action ..." Section 402(b), 29 U.S.C. § 482(b). *Marshall v. Local Union No. 639, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., Inc.*, 593 F.2d 1297, 1301 (D.C.Cir.1979). As a consequence of this framework, "[t]he LMRDA precludes any private action by disappointed office seekers or other union members to contest the results of an election." *Sadlowski v. Marshall*, 464 F.Supp. 858, 862 (D.D.C.1979).

Accordingly, if this lawsuit constitutes a challenge of either the 1990 election or the rerun election, elections "already conducted" under 29 U.S.C. § 483, then the Court lacks subject matter jurisdiction because this action does not fall within the remedies of 29 U.S.C. § 482, *i.e.*, the DOL did not bring suit upon a finding of probable cause. The Smith–ROU asserts that subject matter jurisdiction exists for this action because it arises under ERISA and does not present a challenge to either the 1990 election or the rerun election under Title IV. I find otherwise.

A review of the pleadings makes clear that the relief sought by the parties compels the Court to determine to whom the Plans should disburse monies owed to the ROU. The Smith–ROU originally instituted suit in the Supreme Court of the State of New York demanding the monies owed to the ROU based upon the 1990 election and the December 1990 DOL letter suggesting that Mr. Smith is president of the ROU. The intervention of Mr. DeLong into the action made the materiality of the ROU presidency more apparent in its direct challenge to the Smith–ROU's authorization for instituting suit on behalf of the ROU and its entreaty for the monies owed by the Plans. Finally, the Smith–ROU's cross-claim against Mr. DeLong made the ROU presidency an even more conspicuous element of the action by alleging that Mr. Harper falsely maintains that he is president of the ROU and by seeking an injunction essentially preventing the ROU from operating pursuant to the instructions of Mr. Harper and his supporters.

The Smith–ROU would have the Court focus upon the ERISA aspects of this matter in order to find subject matter jurisdiction. I find such an analysis to be shortsighted and misleading. If the Court were to accept jurisdiction and then decide to whom the Plans should dispense funds owed to the ROU, the Court would effectively endorse either Mr. Smith or Mr. Harper as president of the ROU. Either outcome would necessarily validate the 1990 election or the rerun election and, as a corollary, invalidate the election not validated.[6] The Court is unwilling to place such a blind eye to the consequences of its actions under Title IV.

Courts have often previously considered the implications their rulings would have under Title IV in analogous situations. In *Anson v. National Maritime Union of Am.*, 595 F.Supp. 847, 850 (S.D.N.Y.1984), plaintiffs asserted claims framed around Title I of the LMRDA regarding the rights of union members, *see* 29 U.S.C. § 411(a)(1)–(2). The claims addressed the nominating process for union delegates to a convention and the use of union funds to promote candidacies. Despite the manner in which plaintiffs presented their claims, the Court recognized that the claims "in substance" included violations of Title IV and constituted a challenge to an election.

**6.** The Smith–ROU asserts a tangled argument that the Court can rely upon the ballot count from the 1990 election without transgressing the limitations of Title IV because the 1990 election was never challenged through union mechanisms and never came before the DOL. This argument is spurious. First, the predicate for the Smith–ROU's argument is false. The 1990 election was challenged insofar as the DEC apparently intended for the rerun election to resolve disputes surrounding the 1990 election, and the 1990 election did come before the DOL as evidenced in the DOL letter of July 24, 1991 and the DOL's ultimate ruling of November 22, 1992. Second, the circumstances surrounding the 1990 election and the rerun election require them to be considered together in order for any determination to be made about the ROU presidency. The Smith–ROU cannot cut and paste facts in order to create a record from which the restrictions placed by Title IV upon the Court's subject matter jurisdiction might be avoided.

**156**

595 F.Supp. at 850–51. Accordingly, the Court dismissed the action for lack of subject matter jurisdiction. 595 F.Supp. at 851. *See also Molina v. Union de Trabajadores de Muelles y Ramas Anexas, Local 1740, UTM–ILA,* 762 F.2d 166, 168 (1st Cir.1985) (Title I claim did not "escape" bar of 29 U.S.C. § 403 where claim required court to address validity of election); *Local 75A, United Furniture Workers of Am. v. Scarbrough,* 122 L.R.R.M. 2050 (D.Md. 1986) (challenge of candidate's eligibility amounted to dispute of election's validity).

Similarly in *Wolfson v. Newspaper and Mail Deliverers' Union of New York and Vicinity,* 713 F.Supp. 700 (S.D.N.Y.1989), two candidates for a union presidency sought to have the Court address election issues under the pretense of a contract dispute concerning with the union's constitution. The Court dismissed the action for lack of subject matter jurisdiction because it found the essence of the complaint to deal with post-election Title IV relief. 713 F.Supp. at 703. *See also Brown v. American Arbitration Ass'n,* 717 F.Supp. 195, 202 (S.D.N.Y.1989) (plaintiffs' allegations for breach of contract dismissed for failure to state a claim because "gravamen" of complaint challenged validity of union election).

Despite the Smith–ROU's attempt to wrap its claims around ERISA, this action directly presents the question of whether Mr. Smith or Mr. Harper is the president of the ROU. Because answering that question requires the Court to test the 1990 election and the rerun election, the Court lacks subject matter jurisdiction pursuant to the limitations of Title IV.

IV. *Conclusion*

For the reasons stated above, the Court finds that it lack subject matter jurisdiction to decide the merits of the claims before it. The Clerk of the Court is directed to enter judgment dismissing this action; the parties shall bear their own costs.

SO ORDERED.