CALHOON, PRESIDENT, OR PETERS, SECRE-
TARY-TREASURER OF DISTRICT NO. 1, NA-
TIONAL MARINE ENGINEERS' BENEFICIAL
ASSOCIATION, AFL–CIO *v.* HARVEY ET AL.

No. 17.  Argued October 20, 1964.—Decided December 7, 1964.

*David Scribner* argued the cause for petitioner. With
him on the brief was *Lee Pressman.*

*Burton H. Hall* argued the cause and filed a brief for
respondents.

Briefs of *amici curiae*, urging reversal, were filed by *Solicitor General Cox* for the United States and by *J. Albert Woll, Robert C. Mayer, Theodore J. St. Antoine* and *Thomas E. Harris* for the American Federation of Labor and Congress of Industrial Organizations.

Briefs of *amici curiae,* urging affirmance, were filed by *Melvin L. Wulf* for the American Civil Liberties Union and by *Rowland Watts* for the Workers Defense League.

MR. JUSTICE BLACK delivered the opinion of the Court.

This case raises important questions concerning the powers of the Secretary of Labor and federal courts to protect rights of employees guaranteed by the Labor-Management Reporting and Disclosure Act of 1959.[1]

The respondents, three members of District No. 1, National Marine Engineers' Beneficial Association, filed a complaint in Federal District Court against the union, its president and its secretary-treasurer, alleging that certain provisions of the union's bylaws and national constitution violated the Act in that they infringed "the right of members of defendant District No. 1, NMEBA, to nominate candidates in elections of defendant, which right is guaranteed to each member of defendant, and to each plaintiff, by Section 101 (a)(1) of the LMRDA . . . ." [2] It was alleged that § 102 of Title I of the Act gave the District Court jurisdiction to adjudicate the controversy.[3] The union bylaws com-

---

[1] 73 Stat. 519, 29 U. S. C. § 401 *et seq.* (1958 ed., Supp. V).

[2] "Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws." 73 Stat. 522, 29 U. S. C. § 411 (a)(1) (1958 ed., Supp. V).

[3] 73 Stat. 523, 29 U. S. C. § 412 (1958 ed., Supp. V).

plained of deprived a member of the right to nominate anyone for office but himself. The national constitution in turn provided that no member could be eligible for nomination or election to a full-time elective office unless he had been a member of the national union for five years and had served 180 days or more of seatime in each of two of the preceding three years on vessels covered by collective bargaining agreements with the national or its subsidiary bodies. On the basis of these allegations respondents asked that the union be enjoined from preparing for or conducting any election until it revised its system of elections so as to afford each of its members a fair opportunity to nominate any persons "meeting fair and reasonable eligibility requirements for any or all offices to be filled by such election." [4]

The union moved to dismiss the complaint on the grounds that (1) the court lacked jurisdiction over the subject matter, and (2) the complaint failed to state a claim upon which relief could be granted. The District Court dismissed for want of "jurisdiction," [5] holding that the alleged conduct of the union, even if true, failed to show a denial of the equal rights of all members of the union to vote for or nominate candidates guaranteed by § 101 (a)(1) of Title I of the Act, so as to give the District Court jurisdiction of the controversy under § 102. The allegations, said the court, showed at most imposition of qualifications of eligibility for nomination and election so restrictive that they might violate § 401 (e) of Title IV by denying members a reasonable opportunity to nominate and vote for candidates. [6] The District

---

[4] The complaint also asked for damages.

[5] 221 F. Supp. 545, 550.

[6] "In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504

Court further held that it could not exercise jurisdiction to protect § 401 (e) rights because § 402 (a)[7] of Title IV provides a remedy, declared by § 403 to be "exclusive," authorizing members to vindicate such rights by challenging elections after they have been held,[8] and then only by (1) first exhausting all remedies available with the union, (2) filing a complaint with the Secretary of Labor, who (3) may, after investigating the violation alleged in the complaint, bring suit in a United States district court to attack the validity of the election. The Court of Appeals reversed, holding that "the complaint alleged a violation of § 101 (a)(1) and that federal jurisdiction existed under § 102." 324 F. 2d 486, 487.[9] Because of the importance of the questions presented and conflicting views in the courts of appeals and the district courts,[10] we granted certiorari. 375 U. S. 991.

---

of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice . . . ." 73 Stat. 533, 29 U. S. C. § 481 (e) (1958 ed., Supp. V).

[7] 73 Stat. 534, 29 U. S. C. § 482 (a) (1958 ed., Supp. V).

[8] Section 403 provides also that "[e]xisting rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections prior to the conduct thereof shall not be affected . . . ." 73 Stat. 534, 29 U. S. C. § 483 (1958 ed., Supp. V).

[9] While both courts below referred to the question before us as "jurisdictional," it is obvious that the courts differed as to whether the facts alleged in the complaint stated a "cause of action," thereby raising some of the same problems discussed in *Bell* v. *Hood,* 327 U. S. 678. That question need not concern us here, however.

[10] See, *e. g., Mamula* v. *United Steelworkers,* 304 F. 2d 108 (C. A. 3d Cir.), cert. denied, 371 U. S. 823; *Beckman* v. *International Assn. of Bridge Workers,* 314 F. 2d 848 (C. A. 7th Cir.); *Robins* v. *Rarback,* 325 F. 2d 929 (C. A. 2d Cir.), petition for cert. pending, No. 11, Misc., 1964 Term; *Johnson* v. *San Diego Waiters & Bartenders Union,* 190 F. Supp. 444 (D. C. S. D. Cal.); *Colpo* v. *Highway Truck Drivers & Helpers,* 201 F. Supp. 307 (D. C. D. Del.)

138

I.

Jurisdiction of the District Court under § 102 of Title I depends entirely upon whether this complaint showed a violation of rights guaranteed by § 101 (a)(1), for we disagree with the Court of Appeals' holding that jurisdiction under § 102 can be upheld by reliance in whole or in part on allegations which in substance charge a breach of Title IV rights. An analysis and understanding of the meaning of § 101 (a)(1) and of the charges of the complaint are therefore essential to a determination of this issue. Respondents charge that the bylaws and constitutional provisions referred to above infringed their right guaranteed by § 101 (a)(1) to nominate candidates. The result of their allegations here, however, is an attempt to sweep into the ambit of their right to sue in federal court if they are denied an equal opportunity to nominate candidates under § 101 (a)(1), a right to sue if they are not allowed to nominate anyone they choose regardless of his eligibility and qualifications under union restrictions. But Title IV, not Title I, sets standards for eligibility and qualifications of candidates and officials and provides its own separate and different administrative and judicial procedure for challenging those standards. And the equal-rights language of § 101 (a)(1) would have to be stretched far beyond its normal meaning to hold that it guarantees members not just a right to "nominate candidates," but a right to nominate anyone, without regard to valid union rules. All that § 101 (a)(1) guarantees is that

> "Every member of a labor organization shall have equal rights and privileges . . . to nominate candidates, to vote in elections or referendums of the labor organization . . . and to participate in the delibera-

vacated as moot, 305 F. 2d 362 (C. A. 3d Cir.), cert. denied, 371 U. S. 890; *Jackson* v. *International Longshoremen's Assn.*, 212 F. Supp. 79 (D. C. E. D. La.).

tions and voting . . . subject to reasonable rules and regulations in such organization's constitution and bylaws."

Plainly, this is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote. And Congress carefully prescribed that even this right against discrimination is "subject to reasonable rules and regulations" by the union. The complaining union members here have not been discriminated against in any way and have been denied no privilege or right to vote or nominate which the union has granted to others. They have indeed taken full advantage of the uniform rule limiting nominations by nominating themselves for office.[11] It is true that they were denied their request to be candidates, but that denial was not a discrimination against their right to nominate, since the same qualifications were required equally of all members. Whether the eligibility requirements set by the union's constitution and bylaws were reasonable and valid is a question separate and distinct from whether the right to nominate on an equal basis given by § 101 (a) (1) was violated. The District Court therefore was without jurisdiction to grant the relief requested here unless, as the Court of Appeals held, the *"combined* effect of the eligibility requirements and the restriction to self-nomination" is to be considered in determining whether § 101 (a)(1) has been violated.[12]

## II.

We hold that possible violations of Title IV of the Act regarding eligibility are not relevant in determining whether or not a district court has jurisdiction under

---

[11] It appears that the present union practice is to permit candidates to be nominated by other union members, but that change in procedure does not affect our decision.

[12] 324 F. 2d, at 489. (Emphasis supplied.)

§ 102 of Title I of the Act. Title IV sets up a statutory scheme governing the election of union officers, fixing the terms during which they hold office, requiring that elections be by secret ballot, regulating the handling of campaign literature, requiring a reasonable opportunity for the nomination of candidates, authorizing unions to fix "reasonable qualifications uniformly imposed" for candidates, and attempting to guarantee fair union elections in which all the members are allowed to participate. Section 402 of Title IV, as has been pointed out, sets up an exclusive method for protecting Title IV rights, by permitting an individual member to file a complaint with the Secretary of Labor challenging the validity of any election because of violations of Title IV. Upon complaint the Secretary investigates and if he finds probable cause to believe that Title IV has been violated, he may file suit in the appropriate district court. It is apparent that Congress decided to utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest. Cf. *San Diego Building Trades Council* v. *Garmon,* 359 U. S. 236, 242. In so doing Congress, with one exception not here relevant,[13] decided not to permit individuals to block or delay union elections by filing federal-court suits for violations of Title IV. Reliance on the discretion of the Secretary is in harmony with the general congressional policy to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts.

---

[13] Section 401 (c) of the Act permits suits prior to election in the United States District Courts by any bona fide candidate for union office to enforce the rights, guaranteed by that section, to equal treatment in the distribution of campaign literature and access to membership lists. 73 Stat. 532, 29 U. S. C. § 481 (c) (1958 ed., Supp. V).

Without setting out the lengthy legislative history which preceded the passage of this measure, it is sufficient to say that we are satisfied that the Act itself shows clearly by its structure and language that the disputes here, basically relating as they do to eligibility of candidates for office, fall squarely within Title IV of the Act and are to be resolved by the administrative and judicial procedures set out in that Title.

Accordingly, the judgment of the Court of Appeals is reversed and that of the District Court is affirmed.

*It is so ordered.*

MR. JUSTICE DOUGLAS would affirm the judgment of the Court of Appeals for the reasons stated in its opinion as reported in 324 F. 2d 486.

MR. JUSTICE STEWART, whom MR. JUSTICE HARLAN joins, concurring.

This case marks the first interpretation by this Court of the significant changes wrought by the Labor-Management Reporting and Disclosure Act of 1959 increasing federal supervision of internal union affairs. At issue are subtle questions concerning the interplay between Title I and Title IV of that Act. In part, both seem to deal with the same subject matter: Title I guarantees "equal rights and privileges . . . to nominate candidates"; Title IV provides that "a reasonable opportunity shall be given for the nomination of candidates." Where the two Titles of the legislation differ most substantially is in the remedies they provide. If a Title I right is at issue, the allegedly aggrieved union member has direct, virtually immediate recourse to a federal court to obtain an adjudication of his claim and an injunction if his complaint has merit. 73 Stat. 523, 29 U. S. C. § 412 (1958 ed., Supp. V). Vindication of claims under Title IV may be much more onerous. Federal-court suits can be

brought only by the Secretary of Labor, and then, only after the election has been held. An additional barrier is thus placed between the union member and the federal court. Remedies shape the significance of rights, and I think the Court too casually forecloses the direct access to a federal court which the Court of Appeals held was given these respondents by Congress.

At the time this case was brought, District 1 of the National Marine Engineers' Beneficial Association (NMEBA) had two rules of direct relevance here governing selection of candidates for election to union office. One rule, of long standing in the union, prescribed that self-nomination was the only manner by which a name could be placed before the membership for election to union office. The second rule, adopted seven months before this election was scheduled to occur, severely limited eligibility for office by requiring that prospective officers must have belonged to the national union for five years and served 180 or more days of sea duty in each of two years during the three-year period before the election.[1] According to the three union members who brought this action, the combination of these rules unreasonably limited their right to nominate. They alleged that, except for those members of the union who fulfilled the strict eligibility requirements, the self-nomination rule emptied of all meaning the equal right to nominate. To be sure, the "right to nominate" continued, but, they say, for the countless union members rendered ineligible for office by the new sea-duty rule, the privilege of turning in one's name for prospective candidacy was meaningless.

The Court precludes the District Court from asserting jurisdiction over this complaint by focusing on the fact

---

[1] An additional restriction, applicable solely to the post of president, required that all candidates for that office must have served the union in some prior official capacity.

that one of the imposed restrictions speaks in terms of eligibility. And since these are "possible violations of Title IV of the Act regarding eligibility" they "are not relevant in determining whether or not a district court has jurisdiction under § 102 of Title I of the Act." By this reasoning, the Court foreclosed early adjudication of claims concerning participation in the election process. But there are occasions when eligibility provisions can infringe upon the right to nominate. Had the NMEBA issued a regulation that only Jesse Calhoon was eligible for office, no one could place great store on the right to self-nomination left to the rest of the membership. This Court long ago recognized the subtle ways by which election rights can be removed through discrimination at a less visible stage of the political process. The decisions in the *Texas Primary Cases* were founded on the belief that the equal right to vote was impaired where discrimination existed in the method of nomination. *Smith* v. *Allwright,* 321 U. S. 649; *Nixon* v. *Herndon,* 273 U. S. 536. See *United States* v. *Classic,* 313 U. S. 299. No less is the equal right to nominate infringed where onerous burdens drastically limit the candidates available for nomination. In scrutinizing devices designed to erode the franchise, the Court has shown impatience with arguments founded in the form of the device. *Gomillion* v. *Lightfoot,* 364 U. S. 339, 345. If Congress has told the courts to protect a union member from infringement of his equal right to nominate, the courts should do so whether such discrimination is sophisticated or simple-minded. *Lane* v. *Wilson,* 307 U. S. 268, 275.

After today, simply by framing its discriminatory rules in terms of eligibility, a union can immunize itself from pre-election attack in a federal court even though it makes deep incursions on the equal right of its members to nominate, to vote, and to participate in the union's internal affairs.

The Court justifies this conclusion by looking to the "structure and language" of the Act. The language is certainly not free from doubt. And the legislative history indicates that the structure can be misleading. What now constitutes Titles II through VI of the Act was substantially contained in the original bill presented to the Senate by Senator Kennedy. Title I, first introduced by Senator McClellan, was the product of doubt that the bill went far enough in guaranteeing internal democracy in union affairs. The concept of Title I—its stress on equal rights and judicial protection—was the subject of great controversy both in the Senate and in the House. Repeated attempts were made by representatives of organized labor, among other groups, to have the strict mandate of this so-called Bill of Rights modified, or eliminated altogether. Despite these efforts to remove Title I, it endured, and indeed was amended to provide stronger remedial provisions than those contained in the original version. As originally introduced, § 102 would have required an aggrieved union member to make his complaint to the Secretary of Labor, exactly the remedy provided by Title IV. The Kuchel amendment, however, substituted the present provision permitting suit by an aggrieved member in a federal district court. When Senator Kuchel introduced this change, he commented:

> "[H]ere is one of the major changes in the proposal. The amendment of the Senator from Arkansas provided that the Secretary of Labor might, on behalf of the injured or aggrieved member, have the right to litigate the alleged grievance and to seek an injunction or other relief. We believe that giving this type of right to the aggrieved employee member himself is in the interest of justice . . . ." II Leg.

Hist., Labor-Management Reporting and Disclosure Act of 1959, 1232.

Senator Clark of Pennsylvania noted that the Kuchel amendment "takes the Federal bureaucracy out of this bill of rights and leaves its enforcement to union members, aided by the courts." II Leg. Hist. 1233.

Nonetheless, the Court finds a "general congressional policy" to avoid judicial resolution of internal union disputes. That policy, the Court says, was designed to limit the power of individuals to block and delay elections by seeking injunctive relief. Such an appraisal might have been accurate before the addition of Title I, but it does not explain the emphasis on prompt judicial remedies there provided. In addition to the injunctive relief authorized by § 102 [2] and the saving provisions of § 103,[3] § 101 (a)(4) modifies the traditional requirement of exhausting internal remedies before resort to litigation.[4] Even § 403 is not conclusive on the elimination of pre-election remedies.[5] At the least, state-court actions

---

[2] "SEC. 102. Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

[3] "SEC. 103. Nothing contained in this title shall limit the rights and remedies of any member of a labor organization under any State or Federal law or before any court or other tribunal, or under the constitution and bylaws of any labor organization."

[4] See *Detroy* v. *American Guild of Variety Artists*, 286 F. 2d 75 (C. A. 2d Cir. 1961).

[5] "SEC. 403. No labor organization shall be required by law to conduct elections of officers with greater frequency or in a different form or manner than is required by its own constitution or bylaws,

may be brought in advance of an election to "enforce the constitution and bylaws." And as to federal courts, it is certainly arguable that recourse through the Secretary of Labor is the exclusive remedy only after the election has been held.[6] By reading Title I rights so narrowly, and by construing Title IV to foreclose absolutely pre-election litigation in the federal courts, the Court sharply reduces meaningful protection for many of the rights which Congress was so assiduous to create.[7] By so simplifying the tangled provisions of the Act, the Court renders it virtually impossible for the aggrieved union member to gain a hearing when it is most necessary— when there is still an opportunity to make the union's rules comport with the requirements of the Act.

My difference with the Court does not reach to the disposition of this particular case. Whether stated in terms

---

except as otherwise provided by this title. Existing rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections prior to the conduct thereof shall not be affected by the provisions of this title. The remedy provided by this title for challenging an election already conducted shall be exclusive."

[6] See Summers, Pre-Emption and the Labor Reform Act—Dual Rights and Remedies, 22 Ohio St. L. J. 119, 138–139 (1961). It would be strange indeed if only state courts were available to enforce the federal law created by the Act during the pre-election period.

[7] The Court's reading of federal-court remedies available under Title I and Title IV is particularly restrictive because of the limited powers of the district judge once the balloting has occurred. Under § 402 (c), the court is confined to setting the election aside only if "the violation of section 401 may have affected the outcome." For the aggrieved union member, this protection may be totally inadequate. The function of nominating a candidate is not always to gain the office. A faction may be vitally interested in appearing on the ballot merely to show that it is part of the political structure of the union. Under the Court's view, until such a faction approaches majority status, judicial relief in the federal courts will be absent. See Summers, Judicial Regulation of Union Elections, 70 Yale L. J. 1221, 1257 (1961).

of restrictions on the right to nominate, or in terms of limitations on eligibility for union office, I think the rules of a labor organization would operate illegally to curtail the members' equal right to nominate within the meaning of Title I only if those rules effectively distorted the basic democratic process. The line might be a shadowy one in some cases. But I think that in this case the respondents did not allege in their complaint nor demonstrate in their affidavits that this line was crossed. I would therefore remand the case to the District Court with directions to dismiss the complaint for failure to state a claim for relief.