Jesus Castro MOLINA, et al.,
Plaintiffs, Appellants,

v.

UNION DE TRABAJADORES DE
MUELLES Y RAMAS ANEXAS, LO-
CAL 1740, UTM–ILA, et al., Defendants,
Appellees.

No. 84–1868.

United States Court of Appeals,
First Circuit.

Heard April 1, 1985.

Decided May 17, 1985.

Vincent M. Rotolo, Santurce, P.R., for plaintiffs, appellants.

Charles R. Goldburg, New York City, with whom Thomas W. Gleason, New York City, was on brief for defendants, appellees.

Before COFFIN, Circuit Judge, ALD-RICH and ROSENN,* Senior Circuit Judges.

COFFIN, Circuit Judge.

This case involves the often confusing interrelationship of the rights and remedies provided under Titles I and IV of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 401–531. Appellants filed their suit under Title I of the Act, but the district court found that they were alleging a Title IV claim. The court dismissed the suit because only the Secretary of Labor can sue under Title IV and appellants had failed to secure the Secretary's participation in their action. We affirm.

The conflict in this case revolves around a union election on June 20, 1981, in which appellant Jesus Castro Molina was re-elected president of Local 1740 of the International Longshoreman's Association, AFL–

* Of the Third Circuit, sitting by designation.

CIO ("Local 1740").[1] Shortly thereafter, Jorge Aponte Figueroa, who lost to Castro Molina by four votes, protested the election on the ground that ineligible voters had participated. Local 1740's constitution and bylaws required that members pay their dues at least three months before the election to be eligible to vote. An election committee investigated Aponte Figueroa's protest and found that 23 members who had not paid their dues in time had voted. The committee set aside the election, and scheduled a rerun between Castro Molina and Aponte Figueroa for August 1. Aponte Figueroa was elected by a wide margin. It turned out that the election committee had no authority to order a rerun, and so a third, authorized, election was held on September 12, in which Aponte Figueroa again was elected overwhelmingly.

Castro Molina protested this multi-election procedure and his loss of the presidency on a number of occasions, but Local 1740 took no action on his objections. He sought the intervention of the Secretary of Labor, presumably under the statutory provision allowing union members to file a complaint with the Secretary after exhausting internal remedies, 29 U.S.C. § 482, but the Secretary declined to enter the fray because Castro Molina's complaint was not filed within the statutory deadline.[2] Appel-

lants then filed this suit on April 12, 1982, seeking reinstatement for Castro Molina as well as damages. At this point, however, they ask only for damages.[3]

■ We begin our discussion with a brief overview of Titles I and IV of the LMRDA. Title I, 29 U.S.C. §§ 411–415, provides a "Bill of Rights" for union members, guaranteeing "equal rights and privileges" to nominate and vote for candidates, as well as freedom of speech and assembly and protection from improper discipline. Title I is enforceable in federal court through a private action filed by the aggrieved union members. In contrast, Title IV, 29 U.S.C. §§ 481–483, sets out detailed regulations "aimed solely at protecting union democracy through free and democratic elections," *Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley,* —— U.S. ——, 104 S.Ct. 2557, 2559, 81 L.Ed.2d 457 (1984) *("Crowley").* Enforcement of Title IV rests with the Secretary of Labor, who investigates individual members' complaints and files suit in federal court if a grievance has merit. Although some overlap exists between the two types of claims, section 403 of the Act explicitly provides that Title IV's remedies are exclusive for *completed* elections, 29 U.S.C. § 483.[4] This provision means that

1. Castro Molina's original and first amended complaints also contested a District Council election on October 10, 1981, in which Aponte Figueroa was elected president. In their brief to this court, appellants do not challenge dismissal of their complaint with regard to that election.

2. Castro Molina's failure to file on time may have been the unfortunate result of a lack of communication between him and his lawyer. Castro Molina sent a protest letter to Local 1740 on September 13, 1981. Under 29 U.S.C. § 482(a), he was required to file a complaint with the Secretary of Labor within one month after the union either refused action or took no action on his protest for three months. Although there is some question about whether the deadline should have been January 13 or January 16 because Castro Molina did not give a copy of his protest letter to the union's financial secretary until September 16, he was late in either case, filing on February 2, 1982. Castro

Molina's lawyer had phoned the Department of Labor on January 11, 1982 to find out the deadline for the complaint. The lawyer apparently was unaware of the protest letter of September 13, and so reported that his client had first invoked internal remedies on October 13. As a result, the Department representative provided the incorrect deadline date, and the complaint therefore was late.

3. Appellants dropped their reinstatement request after Castro Molina was convicted of an offense making him ineligible for union office for five years. Even if he had not been convicted, the reinstatement issue would have been mooted by the regularly scheduled election of June 1984, which ended the disputed term of office.

4. The final sentence of § 483 states: "The remedy provided by this subchapter for challenging an election already conducted shall be exclusive."

only the Secretary of Labor may bring an action in federal court to set aside an election if it already has been held, *Crowley, id.* at 2565; *Trbovich v. United Mine Workers,* 404 U.S. 528, 531, 92 S.Ct. 630, 632, 30 L.Ed.2d 686 (1972), and, with few exceptions, it "bars Title I relief when an individual union member challenges the validity of an election that has already been completed," *Crowley,* 104 S.Ct. at 2566.

In this case, appellants allege violations of their equal voting rights and their freedom of speech and assembly, protected under Title I's "Bill of Rights." The typical Title I claim involves an allegation of unequal treatment among union members. *Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). Although appellants alleged in their original complaint that voters other than the 23 listed by the union had not been challenged even though they also did not pay their dues on time, this allegation stood without support. They did not allege that only votes for Castro Molina, or a disproportionate number of votes cast for him, were invalidated. Nor did they claim that their own votes were invalidated. Moreover, appellants dropped this allegation when they filed their first amended complaint. It also does not appear in their offered second amended complaint or in their appellate brief. Because appellants barely made, and have since abandoned, this claim of unequal treatment, we decline to discuss it.

What appellants do argue at length is that defendants activated the eligibility rule for an unfair, or, in their words, "discriminatory", purpose—to oust Castro Molina from the union presidency because they did not like his views on a controversial issue. In past years, the three-month payment requirement had been imposed only on candidates and not on other union members. Thus, appellant's argument appears to be that an improper motive caused the union to activate the voting eligibility rule.[5]

Appellants face two hurdles in making their Title I claim. First, *Crowley* explicitly states that section 403, the exclusivity provision, prohibits Title I relief which involves challenging an already conducted election, 104 S.Ct. at 2566. We recognize that appellants' request for validation of the first election arguably is not a "challenge" to that election. We doubt that appellants escape the bar of section 403 with such a request, however, because their complaint seeks indirectly to overturn the later two elections and it directly contests the outcome of the first election insofar as it seeks to reverse the union's invalidation of it. *See Crowley, id.* 104 S.Ct. at 2566 n. 16 ("the exclusivity provision of Title IV may not bar post-election relief for Title I claims or other actions that do not directly challenge the validity of an election already conducted"), and the cases cited therein, *Amalgamated Clothing Workers Rank and File Committee v. Amalgamated Clothing Workers,* 473 F.2d 1303 (3d Cir.1973) and *Ross v. Electrical Workers,* 513 F.2d 840 (9th Cir.1975), neither of which involves changing the outcome of an election, either by validation or invalidation.[6]

We need not face this issue, however, because appellants fail to meet what is in reality their first hurdle: stating a proper Title I claim. Appellants' allegations go to the overall fairness of the election voting process—the domain of Title IV—rather than to an individual's unequal

---

**5.** Other allegations in the complaint also go to this "improper motive" assertion. Appellants allege, for example, that one defendant made false representations to induce Castro Molina into giving consent to the third election.

**6.** Appellants argue that section 403 does not bar their claim because Castro Molina now seeks only damages and not installation into the office of union president. They argue that *Crowley* allows a Title I claim for post-election *dam-* *ages* because it expressly endorses "less intrusive remedies" than invalidation of an already conducted election and court supervision of a new election, 104 S.Ct. at 2571. To award even damages in this case, however, we still would have to address the validity of the elections to determine whether Castro Molina was entitled to the union presidency. Thus, the fact that appellants do not seek reinstatement of Castro Molina is of little consequence.

treatment. The difference between this type of complaint and a discrimination complaint anticipated under the LMRDA's "Bill of Rights" provision can be illustrated through a comparison of two previous cases triggering scrutiny of the distinction between Title I and Title IV claims. In *Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), union members had alleged that certain provisions of the union's bylaws and national constitution which affected the right to nominate and vote violated the "Bill of Rights" provision. The Court rejected their claim, noting that the issue of the provisions' validity would not fall under Title I discrimination because the same qualifications applied to everyone: "The complaining union members here have not been discriminated against in any way and have been denied no privilege or right to vote or nominate which the union has granted to others", *id.* at 139, 85 S.Ct. at 295. In contrast, in *Kupau v. Yamamoto,* 622 F.2d 449, 455 (9th Cir.1980), the union concluded after an election that the winning candidate was not, in fact, eligible to run for the office because he did not meet the requirement that candidates be "working at or depending on the trade for a livelihood," *id.* at 452. The Ninth Circuit found this candidate's claim to be the subject of a proper Title I action because it involved the uneven application of eligibility qualifications, *id.* at 454.[7]

Appellants' claim here, in the form in which it appears in their briefs, resembles the one in *Calhoon* far more than it does the claim in *Kupau.* They do not argue that a rule was applied unevenly but that an evenly applied rule was activated for an improper purpose. As such, it is not a proper Title I claim.[8]

This is not to say that we condone the type of election conduct alleged in appellants' complaint. If appellants' allegations are true, then defendants decided to enforce an eligibility rule against non-candidates because Castro Molina won the election and they disagreed with the way he intended to run the union. Defendant Aponte Figueroa allegedly failed to follow the proper procedures in protesting the election and another defendant made misrepresentations to induce Castro Molina to agree to a third election. Moreover, the third candidate in the first election was dropped from the ballot in the later two elections, and it is unclear whether this affected the outcomes. These allegations strongly suggest a Title IV claim, for Title IV is intended to insure "fair union elections in which all the members are allowed to participate", *Calhoon v. Harvey,* 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964); *Ross v. International Brotherhood of Electrical Workers,* 513 F.2d 840, 842 (9th Cir.1975). Indeed, it may well be that appellants also had a good claim that the eligibility rule at the heart of this conflict was an unreasonable limitation on *all* members' right to vote. The Local's past failure to require payment of dues at least three months before an election suggests that the rule may be unnecessarily restrictive and thus impinge unfairly on the Title IV right to vote assured to "every member in good standing", 29 U.S.C. § 481(e).

Appellants, however, did not, and could not as individuals, bring a Title IV case in the courts. Their failure to enlist the aid

---

**7.** We express no opinion on whether the relief awarded in *Kupau,* a preliminary injunction ordering plaintiff's installation into a union office, would be appropriate under *Crowley;* 104 S.Ct. at 2563.

**8.** Although appellants claim a violation of their rights to freedom of speech and assembly under § 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2), as well as a violation of their voting rights, they make no separate allegations relating to a deprivation of their speech and assembly rights. They do not allege that they were deprived of "the right to meet and assemble freely with other members; [or] to express views, arguments, or opinions", 29 U.S.C. § 411(a)(2), or that the union imposed any other restriction on their rights to speak or assemble. We think it is clear that appellants failed to state a claim under this provision of the Act and so have focused only on their equal voting rights claim under 29 U.S.C. § 411(a)(1). *Cf. Steelworkers v. Sadlowski,* 457 U.S. 102, 103, 102 S.Ct. 2339, 2341, 72 L.Ed.2d 707 (1982).

of the Secretary of Labor in a timely manner precludes federal jurisdiction.[9]

*For the foregoing reasons, the judgment of the district court is affirmed.*

**9.** Had appellants wished to challenge the Secretary's determination not to pursue this case, the proper approach would have been to sue him, not these defendants.