CHAUFFEURS, TEAMSTERS AND HELPERS, LOCAL UNION NO. 171, et al., Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants.

Civ. A. No. 94–0983–R.

United States District Court, W.D. Virginia, Roanoke Division.

Dec. 29, 1994.

Hugh J. Beins, Beins, Axelrod, Osborne & Mooney, P.C., Jonathan G. Axelrod, Elizabeth A. Saindon, Beins, Axelrod, Osborne, Mooney & Green, Washington, DC, for plaintiffs.

John J. Sullivan, Office of the Gen. Council, Washington, DC, for defendants.

*MEMORANDUM OPINION*

TURK, District Judge.

This matter is before the court on plaintiffs' motion for entry of a preliminary injunction and defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). After careful consider-

---

ation of the record, the applicable law, the briefs submitted by the parties, and the arguments presented by counsel at the hearing, the court finds that it must grant the motion to dismiss for lack of subject matter jurisdiction. Accordingly, the court must deny the motion for entry of a preliminary injunction.

## I. BACKGROUND

In October, 1993, Chauffeurs, Teamsters and Helpers, Local Union No. 171 ("Local 171"), a local union of the International Brotherhood of Teamsters ("International"), held its most recent triennial officer election. Members of Local 171 voted by mail ballot. Local 171 sent out ballots to all members. Members then returned their ballots in two envelopes. The inner envelope held the actual ballot and remained sealed and unmarked. Local 171's election procedure, however, required each member to write his name and address in the upper left hand corner of the outer envelope. Election procedure also mandated that any ballots not conforming to the name and address requirements be considered void. The purpose of this procedure was to ensure that Local 171 counted only the eligible votes.

Application of this procedure in the October, 1993 election resulted in the voiding of twenty-two percent of the secret ballots returned. After the election, the losing candidates filed an internal post-election protest pursuant to International's constitution. On February 17, 1994, the Executive Board of Joint Council 83 denied the protest. The defeated candidates then appealed to the General Executive Board of International, which reversed the adverse decision of the Executive Board of the Joint Council and ordered Local 171 to conduct a rerun of the local officers' election. The General Executive Board based its decision on confusing voting instructions and the large number of voided ballots.

Local 171, its officers, and two of its members brought the present suit under Title I of the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411–13, and section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, against International and nineteen of its officials. Plaintiffs claim that defendants reversed the decision of the Joint Council for improper motives under Title I and in violation of International's constitution. The essence of the relief plaintiffs seek is to validate the October, 1993 election and to enjoin International from requiring a rerun election. Plaintiffs have moved the court to enter a preliminary injunction; defendants have moved to dismiss for lack of subject matter jurisdiction. The court held a hearing on this matter on December 20, 1994; thus, the motions now are ripe for consideration.

## II. ANALYSIS

■ The principle issue in this case is whether this action is, in effect, a suit under Title IV of the LMRDA, 29 U.S.C. §§ 481–83, regulating elections for union offices. As the court answers this question affirmatively, the exclusivity provision of Title IV [1] bars the court from considering the merits of plaintiffs' claims under Title I and section 301.

■ The United States Supreme Court has recognized and addressed the conflict between Title I and Title IV of the LMRDA. *See Local No. 82, Furniture and Piano Moving v. Crowley*, 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984); *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). Title I provides a statutory "Bill of Rights" for union members, "including various protections for members involved in union elections, with enforcement and appropriate remedies available in district court." *Crowley*, 467 U.S. at 528, 104 S.Ct. 2557, 2559. Title IV, by contrast, "provides an elaborate postelection procedure aimed solely at protecting union democracy through free and democratic elections, with primary re-

---

**1.** The exclusivity provision states that "[t]he remedy provided by this title for challenging an election already conducted shall be exclusive." 29 U.S.C. § 483. Under Title IV, the exclusive remedy is "a civil action brought by the Secre-

tary of Labor to enforce or set aside an election." *Bradley v. American Postal Workers Union, AFL–CIO*, 962 F.2d 800, 801 (8th Cir.1992) (citing 29 U.S.C. §§ 482–83).

sponsibility for enforcement lodged with the Secretary of Labor." [2] *Id.*

The Court has reiterated the important policy behind the exclusivity provision of Title IV: "Congress's intent 'to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts.'" *Crowley,* 467 U.S. at 548, 104 S.Ct. at 2569 (quoting *Calhoon,* 379 U.S. at 140, 85 S.Ct. at 296). In applying these policies, the Court has concluded that "the exclusivity provision ... plainly bars Title I relief when an individual union member challenges the validity of an election that has already been completed," *Crowley,* 467 U.S. at 541, 104 S.Ct. at 2566, and that "Congress ... decided not to permit individuals to block or delay union elections by filing federal-court suits for violations of Title IV." *Calhoon,* 379 U.S. at 140, 85 S.Ct. at 296.

Plaintiffs' argue that the exclusivity provision is inapplicable, since they are not "*challenging* an election already conducted." 29 U.S.C. § 483 (emphasis added). Rather, plaintiffs contend, they merely seek validation of the October, 1993 election. The court in *Molina v. Union De Trabajadores De Muelles Y Ramas Anexas, Local 1740* faced a similar argument on similar facts. 762 F.2d 166 (1st Cir.1985). There, plaintiffs complained that the union activated a voting eligibility rule for improper motives and sought validation of an election that had been set aside. *Id.* at 167. The court addressed the same argument that plaintiffs advance here:

> We recognize that appellants' request for validation of the first election arguably is not a "challenge" to that election. We doubt that appellants escape the bar of section 403 with such a request, however, because their complaint seeks indirectly to overturn the later two elections and it directly contests the outcome of the first

election insofar as it seeks to reverse the union's invalidation of it.

*Id.* at 168.

The court finds that the reasoning set forth in *Molina* is applicable in the present case. Local 171 challenges the October, 1993 election to the extent that it seeks to reverse the General Election Board's invalidation of that election. It is clear to the court that the real controversy in this case is not over unequal treatment resulting in violations of individual members' rights under Title I, nor is it over violations of International's constitution. The heart of the dispute is over the validity of the October, 1993 election. It involves precisely the issues of internal union controversy over which, absent an internal resolution, Congress intended the Secretary of Labor to exercise primary jurisdiction. Plaintiffs cannot evade the jurisdictional requirements of Title IV simply by mislabeling the cause of action. *See Bradley,* 962 F.2d at 802 (stating that "[i]f a lawsuit alleges Title I violations but is, in effect, a Title IV suit, the suit has been improperly brought, and the court has no jurisdiction over the action"); *Radio–Electronics Officers Union v. Radio Officers Joint Employment Comm.,* 811 F.Supp. 151, 156 (S.D.N.Y.1993) (holding that, despite plaintiff's attempt to "wrap its claims around ERISA," the court lacked subject matter jurisdiction pursuant to the limitations of Title IV); *Wolfson v. Newspaper and Mail Deliverers' Union of New York,* 713 F.Supp. 700, 703 (S.D.N.Y.1989) (holding that where the complaint, alleging Title I and § 301 violations, was essentially an attack on the post-election appeal procedures followed by the union in processing the appeal of two candidates, it was "uncontestably a post-election Title IV complaint," and the court had no jurisdiction to restrain a new election).

The court finds that this action falls under Title IV of the LMRDA. Accordingly, the court concludes that it is without jurisdiction to hear the complaint, and the case is therefore dismissed. The court notes that plaintiffs filed a motion for leave to file an amend-

---

**2.** The Secretary of Labor, intervenor in the present case, also has filed a motion to dismiss for lack of subject matter jurisdiction. A union member who is also a plaintiff filed an administrative complaint under Title IV on November

10, 1994. The Department of Labor has not investigated the complaint, since the complainant has not exhausted the internal union remedies available under the union's constitution and bylaws.

ed complaint on December 19, 1994. The court finds that the proposed amendment would in no way change the legal analysis set forth above. Accordingly the court must deny plaintiffs' motion for leave to amend the complaint.

## III. *CONCLUSION*

For the reasons stated, the court finds that it must grant defendants' motion to dismiss, deny plaintiffs' motion for entry of a preliminary injunction, and deny plaintiffs' motion for leave to file an amended complaint. An appropriate order consistent with this memorandum opinion shall be entered this day.