USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1909

 PAUL McCAFFERTY,

 Plaintiff, Appellee,

 v.

 LOCAL 254, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Reginald C. Lindsay, U.S. District Judge]

 Before

 Boudin, Circuit Judge,
 Campbell, Senior Circuit Judge,
 and Lipez, Circuit Judge.
 
 
 
 Gabriel O. Dumont, Jr. for appellant.
 David B. Rome for appellee.

August 2, 1999

 LIPEZ, Circuit Judge. In February 1998, Paul McCafferty
filed a complaint in the district court requesting a preliminary
injunction against his union, Local 254 of the Service Employees
International Union (hereinafter "the Local" or "Local 254"). 
McCafferty claimed that Local 254 had "infringed upon his right to
seek office within Local 254 . . . by refusing to and failing to
comply with his reasonable requests for a list of [Local 254-
represented] companies/employers and their locations . . . and for
the names and addresses of Local 254 members to allow him to
distribute campaign literature." McCafferty predicated his claim
to relief on Title I and Title IV of the Labor-Management Reporting
and Disclosure Act of 1959 (the LMRDA). After the Local filed its
opposing motion requesting the denial of McCafferty's request for
preliminary relief and the dismissal of his action, the district
court held a hearing and subsequently issued a preliminary
injunction granting McCafferty some of the relief he requested. The
district court also awarded McCafferty attorney's fees in a later
order. This appeal contesting the award of attorney's fees
followed.
 We conclude that McCafferty is entitled to attorney's
fees for prevailing on his Title I claim but he is not entitled to
attorney's fees for his Title IV claim. Given the court's
undifferentiated award of attorney's fees for McCafferty's claims,
we must vacate that award and remand for a new determination of
attorney's fees. We begin our explanation of this result with a
detailed account of the relevant facts and procedure.
 I.
 McCafferty, at all times relevant to this opinion a
member in good standing of Local 254, wanted to run for a union
office; nominations were scheduled for March 1998. On November 26,
1997 he wrote to Local 254's recording secretary requesting, inter
alia, a copy of Local 254's by-laws, blank nomination papers, a
copy of any union rules governing fund raising, and "a list of
Local 254 represented companies." On December 4, 1997, Local
254's recording secretary responded by sending McCafferty a copy of
Local 254's Constitution and by-laws, and pertinent sections of the
LMRDA. He also informed McCafferty that nomination papers had not
yet been printed and that "Local 254 has no specific rules on
governing fund raising." The LMRDA provisions which the Local
provided to McCafferty included 29 U.S.C. 481(c), which sets
forth the Local's obligation "to comply with all reasonable
requests of any candidate to distribute by mail or otherwise at the
candidate's expense campaign literature in aid of such person's
candidacy to all members in good standing." The letter said
nothing about the list of represented companies that McCafferty had
requested.
 On January 28, 1998, McCafferty again wrote to Local
254's recording secretary requesting "a list of Local 254
represented companies/employers and their locations," reiterating
his requests for blank nomination papers and the Local's fund
raising rules, and adding a new request that "the Local provide
[him] with mailing labels containing the names and addresses of
voting Local 254 members." On February 1, 1998, Local 254
distributed a newsletter to all members, including McCafferty,
informing members of official nominating procedures and directions
for obtaining nominating papers. On February 3, 1998, the
recording secretary mailed a letter to McCafferty which included
the following statements:
 There is no requirement to provide prospective
 candidates with a listing of contracted
 employers. You may, however, inspect a list
 of Local 254-contracted employers by
 appointment at the Union Office. You may not
 copy the list.

 Campaign Literature: Reasonable requests of
 any candidate for the Local to mail campaign
 literature at the candidates' expense will be
 complied with. Payment to cover the expenses
 involved in such mailing will be paid in
 advance. Other than distribution of
 literature made at candidate's expense, there
 will be no mailings of campaign literature by
 the Local.

 Membership Lists: Every candidate shall be
 given the right to inspect the printout
 membership list of Local 254. Special
 arrangements will be made to set up a separate
 room where the membership list will be
 available for inspection . . . . No candidate
 shall be furnished a copy of the membership
 list. Candidates may not copy the membership
 list.

This letter, although postmarked on February 4, 1998, did not reach
McCafferty until approximately one month later. Apparently, a
change of address had been filed for McCafferty which temporarily
misdirected his mail to Las Vegas, Nevada.
 On February 6, 1998, McCafferty filed the instant suit,
seeking an injunction to compel Local 254 to provide him with "(a)
a list of all Local 254 bargaining units and locations; and (b)
mailing labels of all voting members in Local 254." On
February 12, the Local responded in writing to McCafferty's request
for a preliminary injunction. While acknowledging its duty under
Title IV to "comply with any reasonable request that the Union
distribute at the member's expense campaign literature," Local 254
denied any "requirement under Title I of the LMRDA that Local 254
furnish McCafferty with a list of Local 254 employers and
locations." Local 254 attached to its response a copy of its
February 3, 1998 letter and a sworn affidavit from the recording
secretary affirming that he had mailed the letter on February 3. 
McCafferty apparently saw the Local's February 3 letter for the
first time when it was filed with the court.
 The district court held a hearing on McCafferty's
preliminary injunction motion on February 13, 1998. At the
hearing, Local 254 reiterated its position that McCafferty had no
right to a copy of either a list of contracting employers or the
membership list. The district court inquired whether Local 254
would agree to post a list of employers and their locations and
allow that list to be copied. The Local assented and, later that
day, posted the list.
 On February 16, McCafferty forwarded a draft preliminary
injunction to Local 254 memorializing the commitments the Local had
made at the February 13th hearing. On February 17, Local 254
notified McCafferty that it would oppose the issuance of an
injunction and that a list of Local 254 employers and addresses had
been posted at the Local's offices since February 13, 1998. 
According to the terms of the draft preliminary injunction, such a
list was to be posted "by the close of business February 19, 1998."
 On February 17, McCafferty filed his proposed injunction
with the court and Local 254 filed its opposition and proposed
order of dismissal. On that same day, the district court issued
the preliminary injunction in its proposed form, adding the
handwritten notation that it was issued "upon agreement of the
parties." The preliminary injunction ordered the Local to post a
list of bargaining units by employer and location; to allow the
copying of that list; and to comply with any candidate request to
mail campaign literature so long as the candidate paid in advance
the cost of such mailing. The preliminary injunction also included
a briefing schedule on the plaintiff's claim for attorney's fees
and costs.
 On July 9, 1998, the district court issued an opinion and
order on attorney's fees setting forth the basis for the issuance
of the preliminary injunction and the award of attorney's fees. 
With respect to McCafferty's request for a list of all bargaining
units represented by Local 254 by employer and location, the court
concluded that this request was "intended to remedy th[e] imbalance
of access to information required for nomination." As such, the
court found that the claim arose under Title I of the LMRDA, and it
awarded attorney's fees to McCafferty pursuant to Hall v. Cole, 412
U.S. 1 (1973). With respect to McCafferty's request for mailing
labels with the addresses of union members, the court concluded
that "McCafferty had a clearly established right to have the union
provide him with mailing labels containing the names and addresses
of voting union members" for the purpose of arranging "at his own
expense, for a timely mailing of campaign literature prior to the
convention at which nominations would be made." Relying on
International Organization of Masters, Mates and Pilots v. Brown,
498 U.S. 466, 476 (1991) for this "clearly established" right, the
court characterized the Local's unwillingness to provide McCafferty
with the requested mailing labels as "verg[ing] on the frivolous." 
Although the court acknowledged that the mailing label claim arose
under Title IV of the LMRDA, it found that "an award of fees is
appropriate on this claim as well." The court ordered the Local to
pay McCafferty an aggregate award of attorney's fees in the amount
of $9,388.35 for his Title I and Title IV claims. This appeal
followed.
 II.
 Before analyzing the specific claims at issue in this
case, we set forth some general principles of law applicable to
these claims.
 A. General Principles
 The LMRDA protects the equal rights of union members to
participate in the internal affairs of their unions. In enacting
the LMRDA, Congress found that "it is essential that labor
organizations . . . and their officials adhere to the highest
standards of responsibility and ethical conduct in administering
the affairs of their organizations," and declared that the LMRDA
was designed "to eliminate or prevent improper practices on the
part of labor organizations." 29 U.S.C. 401(a), (c). Title I
of the LMRDA, 29 U.S.C. 411-15, "provides a Bill of Rights for
union members, guaranteeing equal rights and privileges to nominate
and vote for candidates, as well as freedom of speech and assembly
and protection from improper discipline." Molina v. Union De
Trabajadores De Muelles, 762 F.2d 166, 167 (1st Cir. 1985)
(internal quotation marks omitted). The "typical Title I claim
involves an allegation of unequal treatment among union members." 
Id. at 167 (quoting Local No. 28, Furniture and Piano Moving,
Furniture Store Drivers, Helpers, Warehousemen and Packers v.
Crowley, 467 U.S. 526, 539 (1984)). The focus of Title IV is more
limited. It sets out detailed regulations "aimed solely at
protecting union democracy through free and democratic elections." 
Id. These regulations include the requirement that unions must
"comply with all reasonable requests of any candidate to distribute
by mail or otherwise at the candidate's expense campaign literature
in aid of such person's candidacy." 29 U.S.C. 481(c).
 The LMRDA includes separate enforcement mechanisms for
Title I and Title IV. "Title I is enforceable in federal court
through a private action filed by the aggrieved union members."
Molina, 762 F.2d at 167; see also 29 U.S.C. 412. "Enforcement of
Title IV rests with the Secretary of Labor," Molina, 762 F.2d at
167, with one exception. The provision of Title IV obligating
unions to mail candidates' campaign literature, 29 U.S.C. 481(c),
is "enforceable at the suit of any bona fide candidate for [union
office] in the district court of the United States." 29 U.S.C. 
481 (c); International Organization of Masters, Mates & Pilots v.
Brown, 498 U.S. 466 (1991) ("[U]nlike other rights created by Title
IV that are judicially enforceable only in actions brought by the
Secretary of Labor, the [481(c)] right is directly enforceable in
an action brought by the individual union member); see also Mims
v. Teamsters Local 728, 821 F.2d 1568, 1571 (11th Cir. 1987)
(recognizing that 481(c) "is the only privately enforceable
provision in Title IV"). 
 While neither Title I nor Title IV explicitly authorizes
the award of attorney's fees to prevailing union member-litigants,
the Supreme Court has held that "the allowance of counsel fees to
the successful plaintiff in a suit brought under [Title I] of the
LMRDA is consistent with both the Act and the historic equitable
power of federal courts to grant such relief in the interests of
justice." Hall v. Cole, 412 U.S. 1, 14 (1973). Recognizing that
"the traditional American rule ordinarily disfavors the allowance
of attorney's fees in the absence of statutory . . .
authorization," the Court reasoned that a successful Title I
litigant "render[s] a substantial service to his union as an
institution and to all of its members." Id. at 4, 8 (footnotes
omitted). The Supreme Court compared suits under Title I of the
LMRDA to shareholder suits where the "successful litigation confers
'a substantial benefit on the members of an ascertainable class,'"
(in the LMRDA context, the union membership) and it is therefore
equitable to divide the financial burden among the benefitted
class. Id. at 6 (quoting Mills v. Electric Auto-Lite Co., 396 U.S.
375, 393-94 (1970)). The courts of appeals which have faced the
issue have found this reasoning equally applicable to meritorious
claims to enforce the mailing provision of 481(c), Title IV's
only privately enforceable provision. See Mims, 821 F.2d at 1571;
Bliss v. Holmes, 867 F.2d 256, 258 (6th Cir. 1988).
 Local 254 objects to the court's award of attorney's fees
for McCafferty's employer list claim pursuant to Title I and his
mailing label claim pursuant to Title IV. We consider each claim
in turn.
 B. List of Represented Employers
 The Local characterizes McCafferty's demand for access to
the employer list as a challenge to a general, evenly applied rule
rather than a challenge premised on any discriminatory treatment.
In the absence of such discriminatory treatment, the sine qua non
of a Title I claim, McCafferty's claim would arise exclusively
under Title IV of the LMRDA. As discussed above, the only
privately enforceable provision in Title IV is the provision of 
481(c), which deals with reasonable requests to mail campaign
literature; other provisions of Title IV must be enforced by the
Secretary of Labor. See Molina, 762 F.2d at 167. Thus, if the
Local were correct in its insistence that McCafferty's employer
list claim falls within the exclusive purview of Title IV, the
district court should not have addressed the merits of McCafferty's
request for access to the employer list.
 In support of its argument, the Local invokes Calhoon v.
Harvey, 379 U.S. 134 (1964), and its progeny. In Calhoon, union
members brought a lawsuit, ostensibly under Title I, challenging
their union's restrictive policies regulating eligibility for union
office. See id. at 136. The union by-laws at issue in Calhoon
prohibited a member from nominating anyone but him or herself for
union office, and the union's national constitution required, inter
alia, membership in the national union for five years to be
eligible for union office. See id. The Supreme Court refused to
recognize a Title I action in Calhoon because "Title IV, not Title
I, sets standards for eligibility and qualifications of candidates
and officials and provides its own separate and different
administrative and judicial procedure for challenging those
standards." Id. at 138. The Court emphasized that the complaining
union members had "not been discriminated against in any way and
ha[d] been denied no privilege or right to vote or nominate which
the union has granted to others." Id. at 139 (emphasis added);
see also Molina, 762 F.2d at 168-69 (holding that because
plaintiffs challenged an evenly applied rule as having been
"activated for an improper purpose" their complaint "[went] to the
overall fairness of the election voting process the domain of
Title IV rather than to an individual's unequal treatment" which
would be actionable under Title I). The Local insists that
McCafferty, like the plaintiffs in Calhoon and Molina, complains
about an evenly applied rule which does not discriminate against
any union member.
 The Local misapprehends the nature of McCafferty's Title
I claim, aptly perceived by the court as a claim relating to the
conditions of access to the employer list. The Local conceded at
the preliminary injunction hearing that incumbent union officials
had unlimited access to the employer list. Union members like
McCafferty, intent on running for office and perhaps challenging
incumbents, could view that list only by appointment and could not
copy it. Given the Local's acknowledgment of unlimited incumbent
access to the list, the limited access/no-copy rule was tantamount
to a rule that incumbents may possess the employer list but other
union members may not. The discriminatory effect of that rule on
union members seeking nomination for union office is palpable (see
note 1, above), and is susceptible to a Title I challenge.
 The Local also argues the inapplicability of Title I to
McCafferty's claim based on McCafferty's efforts to secure a
nomination for union office and hence participate in a union
election. According to the Local, the court ignored "long-standing
principles that Title I does not protect the right of candidates or
prospective candidates to seek nomination and election."
 The Local has too limited a view of Title I. Although
Title IV focuses on union elections, "Title I of the LMRDA was
specifically designed to protect the union member's right to seek
higher office in the union." Hall v. Cole, 412 U.S. 14 (1973). 
The rights of union members are not protected exclusively by Title
I or by Title IV. As the Supreme Court has recognized, Title IV
"protects many of the same rights as does Title I." Crowley, 467
U.S. at 539. While Title IV may be the only remedy for rights
protected by both Title I and Title IV once an election is
completed or underway, "the full panoply of Title I rights is
available to individual union members 'prior to the conduct' of a
union election." Id. at 541. Therefore, if a Local denies equal
rights to its members during the nomination process, the Local's
conduct may be challenged in court by members of the union pursuant
to Title I. McCafferty posed such a challenge, and his claim is
cognizable under Title I.
 In its final challenge to McCafferty's Title I claim, the
Local argues that the court wrongly presumed the presence of
discrimination from the Local's concession that incumbent officers
have unequal access to the employer lists and that Title I requires
evidence that incumbents had in fact used their unequal access to
their advantage as candidates. See Marshall v. Provision House
Workers Union, Local No. 274, 623 F.2d 1322, 1326 (9th Cir. 1980)
(finding that "unequal access alone does not warrant a finding of
'discrimination'"); cf. Reich v. Local 396, Int'l Bhd. of
Teamsters, 97 F.3d 1269, 1276 (9th Cir. 1996) (recognizing
discrimination in challengers' limited access to employer lists
where the incumbents exploited their advantage by campaigning at
job sites with which they were familiar because of their activities
as incumbent union officials). This argument of the Local borders
on the frivolous. Its agreement at the preliminary injunction
hearing to grant McCafferty substantially the relief he sought with
respect to the employer list (posting the list and allowing it to
be copied) obviated the need for evidence of actual discrimination
on this Title I claim. Having conceded defeat on this claim before
the district court, the Local cannot assert error on the basis of
insufficient evidence. 
 Given the court's correct determination that McCafferty's
employer list claim was cognizable under Title I, we review for
abuse of discretion the district court's award of attorney's fees
for that claim. See Local 258, Service Employees Int'l Union v.
Nonotuck Resource Assocs., Inc., 64 F.3d 735, 737 (1995). As
already noted, the Supreme Court has sanctioned the award of
attorney's fees to successful litigants under Title I of the LMRDA,
reasoning that union members who prevail on Title I claims
"confer[] substantial benefits" on their fellow union members. 
Hall, 412 U.S. at 5. Local 254 dismisses the relief won by
McCafferty as too insubstantial for the court to "intuitively
conclude that a common 'substantial benefit' was achieved for the
members of Local 254," and argues further that there is no evidence
in the record "that the failure of Local 254 to disseminate a list
of Local 254 employers has ever impeded any member's right to seek
his/her nomination for Union office."
 The Local insists on evidence of a "substantial benefit"
that is not required. In the seminal case of Hall v. Cole, the
Supreme Court affirmed the award of attorney's fees because "by
vindicating his own right of free speech guaranteed by . . . Title
I of the LMRDA, [the plaintiff] necessarily rendered a substantial
service to his union as an institution and to all of its members." 
Hall, 412 U.S. at 8. The district court concluded that
McCafferty's litigation conferred a similar benefit: "McCafferty
unquestionably procured access to employer and bargaining unit
information that far exceeded that which the union had previously
offered to provide." This access advanced the equal rights of
union members to pursue union office. See id. at 8 ("[T]o the
extent that [Title I] lawsuits contribute to the preservation of
union democracy, they frequently prove beneficial 'not only in the
immediate impact of the results achieved but in their implications
for the future conduct of the union's affairs.") (quoting Yablonski
v. United Mine Workers of America, 466 F.2d 424, 431 (D.C. Cir.
1972)). 
 C. The Mailing Labels
 The district court's award of attorney's fees on the
Title IV claim cannot be sustained. As a legal matter, the
district court was incorrect in stating that McCafferty had "a
clearly established right to have the union provide him with 
mailing labels containing the names and addresses of voting union
members." Title IV of the LMRDA imposes on unions the "statutory
duty to distribute campaign literature to their membership in
response to the reasonable request of any candidate for union
office." Brown, 498 U.S. at 467 (construing 29 U.S.C. 481(c)). 
Although the court cited language in the Brown opinion recounting
the candidate's request "that the Union provide him with mailing
labels containing the names and addresses of voting Union members
to be given to a mailing service so that he could arrange, at his
own expense, for a timely mailing" of campaign materials, id. at
469, the Supreme Court affirmed a preliminary injunction that
differed from the request of the plaintiff in Brown by directing
the union "to deliver the names and addresses of the Union members
to a mailing service acceptable to the parties." Id. (emphasis
added).
 Moreover, the parties in Brown were concerned with the
timing of campaign mailings and whether the union could postpone
compliance with an otherwise reasonable mailing request merely
because it conflicted with a union rule that authorized mailings
only after nominations had been made. See id. at 468. In holding
that the union's rule was inconsistent with the union's statutory
obligation to comply with all "reasonable" requests for mailings,
id. at 478, the Supreme Court focused on the timing of mailings of
campaign literature rather than the party who would receive a
member list as a prelude to a mailing. Thus, the Brown Court had
no occasion to comment on the significant difference between the
union member's initial request to have mailing labels provided to
him personally (to turn over to a mailing service) and the district
court's order that the union provide the mailing labels directly to
a mailing service acceptable to the parties. The distinction is 
important because "[t]he legislative history of the LMRDA
demonstrates a congressional intent that the use of membership
lists be severely limited and that such lists be kept out of the
hands of partisans in union campaigns to avoid coercion of
members." Marshall, 623 F.2d at 1326; see also Legislative History
of the Labor-Management Reporting and Disclosure Act of 1959 at
1240 (1959 ed.) (Senator McClellan) (recognizing that there was
"apprehension that a person might become a candidate and then use
the [membership] list for improper purposes" and explaining that
the LMRDA "would simply permit [the candidate] to send his campaign
material to the union and have the union mail it out"). 
 Brown clearly does not stand for the proposition that
candidates for union office are entitled to mailing lists. 
Indeed, such a reading would render another part of 481(c)
superfluous. Section 481(c) gives each candidate for union office
the right to inspect a membership list containing names and last
known addresses of all members "once within 30 days prior to an
election." 29 U.S.C. 481(c); see also 29 C.F.R. 452.71 ("The
right of inspection does not include the right to copy the list but
does include the right to compare it with a personal list of
members."). There would be no reason to guarantee candidates
access to the list "once within 30 days prior to an election" if
candidates were entitled to the list as a matter of right.
 Factually, the history of the mailing label claim is also
markedly different from McCafferty's employer list claim. In his
initial correspondence with the Local's recording secretary,
McCafferty did not inquire about mailing labels and he did not
request that the Local undertake a mailing on his behalf. Later,
McCafferty requested that the Local provide him with a set of
mailing labels of the Local membership to be turned over to a
mailing service, and he continued to press this claim in his
request for injunctive relief. In response, the Local at all times
acknowledged an obligation to undertake a mailing of campaign
literature on McCafferty's behalf (and at his expense), but it
refused to turn over the mailing labels to McCafferty. In fact,
even before McCafferty had requested mailing labels, in response to
McCafferty's first letter, the Local had provided McCafferty with
a copy of section 481(c) of the LMRDA which codifies the Local's
obligation to undertake mailings at the candidate's expense. 
Later, both in its February 3 letter and in its motion to dismiss
McCafferty's complaint, the Local acknowledged this statutory duty
and consistently represented that it intended to comply with this
obligation. With respect to McCafferty's Title IV claim, the
lawsuit had no effect on the union's behavior or obligations. The
court therefore erred in designating McCafferty as a "prevailing
party" on this claim. 
 For these reasons we must vacate the court's award to
McCafferty of attorney's fees which erroneously included fees for
his Title IV claim.
 III.
 McCafferty sought and received from the district court
attorney's fees for the legal work required to establish his right
to attorney's fees in the underlying action. The principle is well
established that "[t]he fee application is a necessary part of the
award of attorney's fees. If the original award is warranted . .
. a reasonable amount should be granted for time spent in applying
for the award." Donovan v. CSEA, Local Union 100, 784 F.2d 98, 106
(2d Cir. 1989). This reasoning applies equally to attorney's fees
on appeal. See Kinney v. International Bhd. Of Elec. Workers, 939
F.2d 690, 695 (9th Cir. 1991); Local 117, Int'l Ass'n of Heat and
Frost Insulators and Asbestos Workers v. Young, 775 F.2d 870, 873
(7th Cir. 1986); see also Hall v. Cole, 376 F. Supp. 460 (E.D.N.Y.
1974) (awarding appellate fees on remand in seminal LMRDA
attorney's fees case). To proscribe attorney's fees for appellate
fee litigation might lead to frivolous fee litigation by union
officials in hopes of frustrating the vindication of members'
rights and chilling future challenges. See Young, 775 F.2d at 873
("If disgruntled union members, as prevailing plaintiffs, were
forced to incur costs for unsuccessful, fruitless Union appeals,
this would have a chilling effect on union members' ability to
afford challenging the union leadership" such that "the purpose of
the LMRDA would be frustrated."). 
 Because our decision requires the district court to re-
calculate the prior fee award, we remand to the district court for
a determination of reasonable attorney's fees for the appellate
litigation as well. See 1st Cir. R. 39.2 (directing applications
for attorney's fees in connection with appeals to be filed with the
clerk of the court of appeals "except in those circumstances where
the court of appeals has ordered that the award of fees and other
expenses be remanded to the district court for a determination").
 IV. 
 For the reasons set forth above, the attorney's fee award
is Vacated and the matter is Remanded to the district court for a
new determination of attorney's fees consistent with this decision.